880 F.2d 414
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Anthony INGRAO, Sr., Joseph Valente, and Helen
Neuman-Valente, Defendants-Appellants,
v.
UNITED STATES of America, Plaintiff-Appellee.
 Nos. 88-1025, 88-1046 and 88-1047.
 United States Court of Appeals, Sixth Circuit.
 July 25, 1989.
 
 Before BOYCE F. MARTIN, Jr. and RYAN, Circuit Judges, and JOHN W. POTTER,* District Judge.
 PER CURIAM.
 
 
 1
 Anthony Ingrao, Sr., Helen Neuman-Valente, and Joseph Valente appeal their jury convictions for conspiracy to possess with the intent to distribute cocaine, in violation of 21 U.S.C. Sec. 846 and possession with intent to distribute controlled substances and aiding and abetting in violation of 21 U.S.C. Sec. 841(a)(1), along with the sentences imposed by the district court.
 
 
 2
 Drug Enforcement Administration Special Agent Michael Mogavero posed as a drug trafficker who wanted to buy cocaine from a contact person named William Mayer. Mayer told Mogavero that his source, a woman, would be able to get two kilograms of cocaine at $37,000.00 per kilogram. On the 23rd of October, 1986, Mayer instructed Mogavero to be in the area of Mayer's business offices around 7:30 p.m. Mogavero arrived with a backup agent, an undercover vehicle and a surveillance crew to observe the building housing Mayer's business. The surveillance agents observed two vehicles arriving together at the business building. The agents observed Joseph Valente being allowed entry into the building through the front door by a man inside the building. Mr. Valente then exited the building and returned shortly with a shorter man carrying a brown paper bag, and both entered the building. The shorter man was identified as Anthony Ingrao, Sr. Mayer contacted Mogavero by digital beeper to come to his office. Mogavero drove to the rear of the two and a half story building where Mayer's office was located. Mogavero saw Valente watching him from the office building. Mayer exited the building and gave Mogavero a sample of cocaine. Mayer and Mogavero then weighed cocaine and started walking toward the office building. The plan was for Mogavero to toss the money into the building through Mayer's office window, and for the cocaine to be tossed down. Valente was standing in the window. As Mogavero walked up to the building, he spotted two men in a van close to Mayer's office window. He questioned their identity and Mayer informed him that the men in the van were "with them." Mogavero called off the sale, retreated to his car, and notified the rest of the agents of what had occurred. The people in the van were Anthony Ingrao, Jr. and John O'Malley.
 
 
 3
 The surveillance crew arrested the individuals at the scene. Ingrao, Jr. and O'Malley were arrested in the parking lot, Valente was arrested at the front door of the building, unlocking the door from the inside. Ingrao, Sr. was arrested on the second level of the building coming out of the women's bathroom. No one else was in the building. A beeper belonging to Ingrao, Sr. was found in the water holding tank of a commode in the women's bathroom. Other evidence seized at the office building included cocaine, a loaded gun and scales.
 
 
 4
 After the arrest of the individuals special agent Coleman spoke with Helen Neuman-Valente on the phone. Ms. Neuman appeared at the office building and told Mayer "your some ... friend and you caused this bust and now look what we got, we are in trouble."
 
 
 5
 Helen Neuman-Valente, Joseph Valente and Anthony Ingrao, Sr. were charged with a two count indictment. A jury returned a guilty verdict as to defendants Ingrao, Sr., Valente, and Neuman-Valente on Count I for conspiracy to possess with the intent to distribute cocaine, and a guilty verdict as to Ingrao, Sr. and Valente on Count II for possession with intent to distribute controlled substances and aiding and abetting.
 
 
 6
 The district court refused to grant Neuman-Valente's motion to further question the jury panel in voir dire as to whether other members' responses to certain questions concerning the encounters of perspective jurors' family or friends with cocaine or other controlled substances biased or changed their attitudes. At trial, the court denied Ingrao's and Valente's motion for a mistrial because two government agents during cross-examination allegedly referred to a confession from William Mayer, an unindicted co-conspirator who had provided a five page written confession after his arrest, which the government had agreed to exclude from testimony. The district court also denied defendant Valente's motion to sever trial based on the fact that a joint trial with other co-defendants might be highly prejudicial to Joseph Valente, as Neuman-Valente had made several statements to special agent Mogavero implicating Valente in the conspiracy. The district court also denied Valente's motion for a mistrial after the government allegedly violated an agreement not to bring into evidence any statements of Neuman-Valente implicating Valente in the cocaine conspiracy. The district court also denied Valente's motion for acquittal for insufficient evidence to convict at the close of trial.
 
 
 7
 All three defendants argue that there was insufficient evidence to support Valente's conviction because there was insufficient identification to link him with the crime. He testified that the only reason that he was at the scene of the crime was because he sought insurance advice from Mr. Mayer. Ingrao argues that the government committed reversible error in not releasing to him, upon a granted motion for discovery, copies of the handwritten confession of alleged co-conspirator William Mayer. Ingrao was given access to copies of the typed version before trial but the handwritten copies were not released to him until after trial. Ingrao's own counsel moved for and was granted a motion in limine to prevent the confession from being used at trial. The United States notes that a reading of the handwritten confession shows that it was inculpatory of Ingrao, and that he could never have used it in any fashion at trial. Ingrao and Joseph Valente argue that he should have ben granted a severance in this case, specifically because statements made by Neuman-Valente, and admitted only against her, were highly prejudicial to Ingrao, despite a curative instruction. The United States notes that the statements by Neuman-Valente were not a confession, and Ingrao was never mentioned in any of the statements. Ingrao argues that 148 day delay from the date of arrest to conviction violated the provisions of the Speedy Trial Act, and that he was improperly sentenced to two ten year consecutive sentences. He claims that one may not be convicted for both conspiracy and possession with intent to distribute cocaine.
 
 
 8
 Neuman-Valente argues that the trial court committed reversible error when it refused to voir dire the panel either individually or collectively, as to possible prejudice from other jurors' responses to personal questions relating to drugs. Neuman-Valente claims that the court's refusal substantially impaired her right to challenge for cause, and her right to peremptory challenges. Neuman-Valente argues that the trial court erred in failing to declare a mistrial where government agents made reference to an unindicted unavailable, co-conspirator's post-arrest confession. William Mayer, an unindicted co-conspirator in the present case, provided the drug enforcement agents with a five page written confession after his arrest. Mayer's confession allegedly implicated the other defendants. Prior to trial, the government agreed that Mayer's confession would have to be excluded from their agents testimony. Neuman-Valente claims that early in the proceedings Agent Mogavero violated the exclusion agreement when he referred to the existence of the confession in response to a leading question by Ingrao Sr.'s counsel during cross-examination. The district court stated that "based on the fact that you asked the question and you knew the area you were going into, I'm denying the motion." The court noted that Mogavero did not state what was in the confession but only mentioned its existence in response to a question by defendant's counsel. Finally, Neuman-Valente and Joseph Valente argue that the trial court's failure to instruct the jury as to all the elements of Count I constituted plain error. Neuman-Valente charges that the court failed to define "possession" for the jury. The United States argues that a review of the instructions reveal that no error occurred and that Neuman-Valente waived the issue by failing to object.
 
 
 9
 As to the issue of jury selection the defense waived this objection by stating they were satisfied with the jury and not requesting the court to act upon their objections.
 
 
 10
 The arguments of Joseph Valente and Ingrao, Sr. as to the sufficiency of the evidence are clearly without merit. The standard set out in United States v. Gallo, 763 F.2d 1504 (6th Cir.1985) was met. As to the testimony of Neuman-Valente, there is no violation of Burton v. United States, 391 U.S. 123 (1968). However, as to Neuman-Valente's argument regarding the sufficiency of the evidence, Judges Ryan and Potter agree there was insufficient evidence and their dissent follows. Judge Martin disagrees and would affirm Neuman-Valente's conviction.
 
 
 11
 We affirm the judgment of the district court as to Ingrao, Sr., and Joseph Valente. We remand with instructions to dismiss the indictment against Neuman-Valente on Count I for conspiracy to possess with intent to distribute cocaine.
 
 
 12
 RYAN, Circuit Judge, writing separately.
 
 
 13
 While this panel is unanimous that the convictions of Anthony Ingrao, Sr. and Joseph Valente must be affirmed, my colleague, Judge Potter, and I conclude, after separate, careful examinations of the record in this case, that the evidence is insufficient to support defendant Helen Neuman-Valente's conviction for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C.A. Sec. 846 (Supp.1989).
 
 
 14
 To justify setting aside Neuman-Valente's conviction for insufficient evidence, the court must conclude that no rational juror could find, beyond a reasonable doubt, on the evidence presented, that Neuman-Valente made an agreement with any of the persons named in the Government's indictment, or anyone else, to knowingly possess with intent to distribute a quantity of cocaine and that in furtherance of such a conspiracy, was the "intermediary" between the other defendants in the case or William Mayer.[1] Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 15
 The entire record evidence in support of the conviction of Neuman-Valente, considered in a light most favorable to the Government, is the following:
 
 
 16
 After undercover Agent Mogavero and Government Agent Coleman carried out the arrest of Neuman-Valente's co-defendants and William Mayer at Mayer's Lathrup Village, Michigan insurance office, Coleman telephoned Neuman-Valente and told her to come to Mayer's office immediately, and that if she refused he would go out and arrest her. When, in obedience to Coleman's order, Neuman-Valente arrived at Mayer's office, she was plainly intoxicated. When she entered the office, according to Coleman, she was "cursing Bill Mayer and giving him her middle finger and started saying 'some friend you are' and things like that and cursing him," and "she said to Bill Mayer, 'You're some fucking friend and you caused this bust and now look what we got, we are in trouble,' and things like that." Coleman later testified that while speaking loudly and cursing, defendant Neuman-Valente said: "I'm fucking dead, I'm dead, we're dead, we're all fucking dead, and just real loud boisterous and semi-uncontrollable." Government Agent McGuire, a backup officer who was at the scene of the arrest, testified that Neuman-Valente stated: "You set us up, we are dead, we are all dead." (Emphasis added.) On cross-examination, McGuire admitted could have said, "You set them up." (Emphasis added.)
 
 
 17
 There is other evidence in the record that Neuman-Valente had been living with defendant Valente and was acquainted with informant William Mayer, and that she expressed considerable concern to the officers about her well being and the well being of her children.
 
 
 18
 After interviewing the defendant at the scene of the arrest for about five minutes, the officers told her she was free to go and allowed her to drive herself home in her automobile, despite the fact that she was intoxicated.
 
 
 19
 Part of the Government's theory of Neuman-Valente's involvement in the conspiracy is that William Mayer, who was deceased at the time of the trial, is alleged to have said that his cocaine source was a woman from Tennessee who would be making a trip to South America to obtain some cocaine. However, there was no evidence introduced, circumstantial or otherwise, that Neuman-Valente was from Tennessee or had ever been in South America, was going to South America, or ever had any possession of or interest in cocaine. The whole of the evidence, viewed in the light most favorable to the Government, is that Neuman-Valente was Valente's live-in girlfriend, was acquainted with informant Mayer, showed up intoxicated at the site of the drug bust, but only when ordered to appear there by a government officer who threatened to arrest her if she did not appear, and was "ranting and raving," as one of the officers described it, in a manner reflected by the language quoted above.
 
 
 20
 One is struck on reading the record that the entire case against Neuman-Valente rests upon the inferences the reader is asked to draw from the ambiguous and inculpatory statement she is said to have made when she appeared, intoxicated, at William Mayer's office. However, cross-examination of Officers Coleman, McGuire, and Mogavero demonstrates that none of the Government's witnesses were able to say that the language they attributed to the defendant was actually spoken by her. Rather, in every instance the witnesses acknowledge in cross-examination that the statements attributed to Neuman-Valente were "something to that effect," and in one instance the officer acknowledged that although he had previously stated that the defendant said "you set us up, we are all dead, we are all dead," actually she could have said "you set them up."
 
 
 21
 The ambiguous statements attributed to Neuman-Valente, even when combined with her intimate association with her co-defendant Valente and her acquaintanceship with the deceased informant Mayer, are wholly insufficient to permit a rational juror to conclude beyond a reasonable doubt that the defendant had conspired with anyone to possess cocaine with intent to distribute it, to say nothing of committing any overt act in pursuant of such an agreement.
 
 
 22
 For the foregoing reasons, we conclude that the evidence in support of Neuman-Valente's conviction is insufficient under the Jackson standard and requires that her conviction be set aside.
 
 
 
 *
 The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Quite aside from the state of the record upon which our determination of the insufficiency of the evidence to support Neuman-Valente's conviction is made, the Government brief offers nothing significant in opposition to the defendants' claim. The Government's response to Neuman-Valente's insufficiency of evidence assignment of error consists of just four paragraphs in what amounts to one page in the Government Brief, wherein one case is cited